UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 94-1115

 UNITED STATES,

 Appellee,

 v.

 DEVON WAYNE SMITH,

 Defendant - Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. William G. Young, U.S. District Judge]
 

 

 Before

 Torruella, Chief Judge,
 

 Boudin, Circuit Judge,
 

 and Keeton,* District Judge.
 

 

 Peter Bruce Krupp, Federal Defender Office, by Appointment
 
of the Court, for appellant.
 James Francis Lang, Assistant United States Attorney, with
 
whom Donald K. Stern, United States Attorney, was on brief for
 
appellee.

 

 September 7, 1994
 

 

* Of the District of Massachusetts, sitting by designation.

 TORRUELLA, Chief Judge. Defendant-Appellant Devon
 

Wayne Smith entered a conditional plea of guilty to an indictment

charging him with illegally reentering the United States

following a deportation order subsequent to a conviction for an

aggravated felony, in violation of 8 U.S.C. 1326(a) and

(b)(2). On appeal, Smith asserts that the district court erred

in denying his motion to dismiss (1) the entire indictment

because the government unduly burdened his ability to appeal the

deportation order underlying the offense, and (2) that part of

the indictment based on his prior aggravated felony conviction

because that conviction was vacated after the government indicted

Smith in this case. We affirm.

 I. BACKGROUND

 On January 5, 1983, Smith, a citizen of Jamaica,

entered the United States at Miami, Florida, as a visitor for

pleasure with authorization to stay until the end of the month.

On October 1, 1984, Smith was charged with possession of

marijuana with intent to distribute in Dorchester, Massachusetts.

Smith was convicted of this offense in Boston Municipal Court

("BMC") on January 30, 1985.

 On August 28, 1985, the Immigration and Naturalization

Service ("INS") initiated deportation proceedings against Smith

on the grounds that Smith's conviction subjected him to

deportation under Section 241(a)(11) of the Immigration and

Nationality Act ("INA"), 8 U.S.C. 1251(a)(11). Several

hearings were held on this matter beginning in July of 1987. At

 -2-

one of these hearings, the INS brought an additional charge

against Smith: remaining in the United States longer than the

one-month period of time granted upon his original admission, an

offense subjecting Smith to deportation under Section 241(a)(2)

of the INA, 8 U.S.C. 1251(a)(2). Smith admitted he was

deportable on this additional ground, but he contested his

deportability on the original 241(a)(11) charge because he was

attempting to have the BMC conviction vacated. Smith chose to

challenge the 241(a)(11) charge, despite the fact that he

admitted to his deportability on other grounds, because certain

forms of relief that are available under 241(a)(2) are not

available once a defendant is found deportable under 

241(a)(11).

 Smith's initial efforts to vacate the BMC conviction

were unsuccessful, and on June 30, 1988, an immigration judge

found Smith was deportable under both 241(a)(2) and 

241(a)(11) and ordered Smith's deportation. Smith appealed this

ruling on the ground that the judge improperly relied upon an

uncertified copy of the BMC conviction.

 On September 25, 1989, while the appeal was pending,

INS agents arrested Smith for an alleged gun offense. Agents

found two 9 mm handguns in Smith's possession after responding to

information provided by the Mirimar, Florida, Police Department

that Smith had been interviewed and found to possess weapons.

The INS knew that Smith had been convicted of carrying a

concealed firearm in October of 1988 (Smith pleaded nolo
 

 -3-

contendere to that charge and an adjudication of guilt was
 

"stayed and withheld") and that Smith had been briefly detained

by the INS in May of 1989 after being found in possession of a

knife during an INS sweep.

 After the September 1989 arrest, the INS took Smith

into custody and held him in lieu of posting a $25,000 bond.

Smith was never officially charged for the gun offense underlying

the arrest. Smith then moved for a bond determination. An INS

hearing officer ruled on the motion and ordered that Smith be

detained without bond. Smith then requested a redetermination of

the ruling before an immigration judge. On October 18, 1989,

following a hearing, an immigration judge denied Smith's request

for a change in his custody status.

 Central to this appeal is Smith's allegation that the

INS detained him without bail in order to unduly burden his

ability to pursue his pending immigration appeal, and to coerce

Smith into waving that appeal. Smith offered no direct evidence

to support this allegation. He does point out, however, that the

record does not indicate that Smith was ever notified of the gun

charges against him -- charges which were never formally made in

the first place -- or that Smith was ever given an opportunity to

be heard on the alleged gun charges underlying his detention.

Smith also points out that, at some point in November of 1989,

Smith was transferred from an INS detention center in Florida,

where his family, business, and lawyer were located, to El Paso,

Texas. Smith's counsel affirmatively asserts in the brief and in

 -4-

prior motions before the court that Smith never had an

opportunity to rebut the gun charges, but this assertion is not

supported by an affidavit from Smith himself, or from anyone else

involved in the bond hearings.1 

 In any event, faced with a lengthy period of

incarceration during the pendency of his immigration appeal,

Smith, in consultation with his attorney in El Paso, decided to

withdraw his appeal and submit to deportation. A motion

withdrawing the appeal, signed by Smith and his attorney, was

filed on November 21, 1989, and Smith was deported to Jamaica.

 In March of 1992, Smith reentered the United States at

Miami. He was subsequently arrested by INS agents in Dorchester,

Massachusetts on March 22, 1993. A federal grand jury then

returned the indictment for this case on May 13, 1993.

Meanwhile, in October of 1993, Smith's current counsel

successfully vacated the original 1985 BMC conviction upon which

Smith's deportation was originally based.

 Smith moved to dismiss the indictment in the present

case by collaterally attacking the deportation order and the

aggravated felony underlying the charged offenses. A hearing was

 

1 There is no evidence in the record concerning what was argued
before the immigration judge or what basis underlay the judge's
decision to uphold the revocation of Smith's bail. Thus, there
is no evidence indicating whether or not Smith was actually heard
on the gun charges. However, Smith's motion for a bond
determination does acknowledge that Smith was detained by the INS
on the basis of a gun charge. Although not critical to the
resolution of this appeal, one could reasonably infer from his
bond motion that Smith did have an opportunity to challenge the
gun charges at the bond hearings.

 -5-

scheduled, but Smith did not request an evidentiary hearing for
 

the motion. Following a hearing on December 9, 1993, the

district court denied Smith's motion to dismiss the indictment.

Smith's counsel subsequently requested approval of several

subpoenas for the purpose of collecting evidence on the

collateral attack issue with the intent of litigating the issue

at trial. Then, on January 12, 1994, the court granted the

government's motion to exclude all evidence of the circumstances

surrounding the validity of the deportation proceedings. Later

that same day, Smith entered a conditional plea of guilty

pursuant to Fed. R. Crim. P. 11(a)(2), reserving for appeal the

issues presented here.

 II. ANALYSIS

A. Collateral Attack on Deportation: Coerced Waiver of Appeal
 

 To establish an offense under 1326, the government

must prove that the defendant has been previously deported. 8

U.S.C. 1326(a)(1). A defendant accused of violating 1326 may

collaterally attack the underlying deportation order if the

defendant can show that he or she was deprived of the opportunity

for meaningful judicial review of that deportation order. United
 

States v. Mendoza-L pez, 481 U.S. 828, 839 (1987) ("Depriving an
 

alien of the right to have the disposition in a deportation

hearing reviewed in a judicial forum requires, at a minimum, that

review be made available in any subsequent proceeding in which

the result of the deportation proceeding is used to establish an

element of a criminal offense.").

 -6-

 Smith argues that his right to collaterally attack the

underlying deportation under Mendoza-L pez was improperly
 

foreclosed by the district court. Smith originally contended in

his motion to dismiss that the INS's detention of Smith for an

uncharged gun offense effectively denied him the opportunity for

meaningful judicial review of the deportation proceeding, and

therefore, the proceeding cannot properly serve as the basis for

his indictment under 8 U.S.C. 1326. After denying this motion,

the court ruled that Smith could not present evidence on this

issue at trial. We find no error in the district court's

actions.

 We have recently held that a defendant who deliberately

and voluntarily waived his right to appeal a prior deportation

order under the advice of counsel, is not deprived of meaningful

judicial review and thus may not collaterally attack the

deportation order during the 1326 criminal proceedings. United
 

States v. Smith, 14 F.3d 662, 665 (1st Cir. 1994); United States
 

v. Vieira-Candelario, 6 F.3d 12, 15 (1st Cir. 1993). In this
 

case, Smith withdrew his appeal of the deportation order under

the advice of counsel. Smith argues, however, that the waiver of

his appeal was not deliberate and voluntary, but rather was

coerced, and thus his case is distinguishable from the situation

in Smith and Vieira-Candelario. According to Smith, the INS's
 

action of imprisoning him without allowing him to challenge the

reason for his incarceration, unconstitutionally burdened his

ability to appeal because it required him to suffer an unlawful

 -7-

imprisonment in order to pursue his right to judicial review.

The only way to gain his rightful freedom, Smith argues, was by

waiving his appeal and accepting deportation.

 There are a couple of subsidiary issues surrounding

Smith's appeal. The first one is whether any waiver, even if

coerced under the most horrendous and fundamentally unfair of

circumstances, would preclude a Mendoza-L pez-type challenge to a
 

subsequent criminal indictment under 1326. We must assume that

there are some circumstances in which a coerced and involuntary

waiver of an appeal constitutes a denial of the opportunity for

meaningful judicial review and thus cannot serve as a bar, under

Smith and Vieira-Candelario, to a collateral challenge of a
 

deportation order. See Mendoza-L pez, 481 U.S. at 839 n.17
 

(noting that abuses such as coerced confessions, biased judging,

and knowing use of perjured testimony "could operate, under some

circumstances, to deny effective judicial review of

administrative determinations").

 The next question is whether Smith's specific

allegations, if true, could constitute sufficiently coercive

circumstances so as to effectively deny Smith of meaningful

judicial review of his deportation order despite his waiver of an

appeal. To the extent Smith alleges that the INS purposefully,

as opposed to mistakenly or inadvertently, detained him without

probable cause, and without formally charging him or allowing him

to subsequently challenge the charges for which he was allegedly

detained, for the deliberate purpose of pressuring him into

 -8-

withdrawing his appeal and expediting his deportation, he

presents allegations that conceivably might be sufficient to

raise a Mendoza-L pez issue in a subsequent criminal case.
 

Although Smith could still pursue his appeal while in prison,

even under such egregious circumstances as the ones he alleges, a

court might not be precluded from finding that such circumstances

violated the requirement that Smith be afforded meaningful

judicial review.

 That leaves the issue of whether Smith adequately

presented the matter to the district court in a way that would

allow the court to make a finding that Smith's allegations are

true. There is no evidence in the record to support any aspect

of Smith's allegations that he was coerced into waiving his

appeal of the deportation order. On the contrary, what evidence

does exist indicates that Smith was lawfully detained for weapons

violations, that he was given two opportunities to challenge his

detention, including a hearing before an immigration judge, and

that the INS reasonably believed it had cause to detain Smith

because Smith had been picked up for previous weapons violations

and because he was found with two 9 mm handguns. The fact that

no formal gun charges were brought against Smith and the fact

that Smith was transferred from Miami to El Paso do not rise to

the level of evidence of deliberate coercion by the INS. In sum,

there is no evidence to support a finding that Smith was denied

meaningful judicial review of his deportation order.

 Smith nevertheless contends that (1) the district court

 -9-

did not even consider the merits of his coercion claim, and (2)

he tried to present evidence in support of his allegations but

the district court prevented him from doing so. As an initial

matter, the court made no factual findings or explicit legal

findings when it denied Smith's motion to dismiss. At that

point, however, Smith had presented no evidence -- not even an

affidavit from Smith himself -- to support his claim of coercion

by the INS. Smith also failed to request an evidentiary hearing

in conjunction with his motion to dismiss. Having thus failed to

establish any factual basis for his claim, the district court was

warranted in rejecting Smith's motion for dismissal out of hand.

See D. Mass. Loc. R. 7.1(A)(2); United States v. Levasseur, 704
 

F. Supp. 1158, 1168 (D.Mass. 1989).

 Smith argues that even if his motion was properly

dismissed, he still had a right to present evidence of the INS's

coercion of Smith at trial as an affirmative defense under the

Mendoza-L pez doctrine. We find no support for this contention.
 

As with motions to suppress evidence, alleged constitutional

infirmities in matters collateral to the elements of the charged

offense involve complex questions of both law and fact that are

appropriately determined by the court in a preliminary hearing.

Cf. Mendoza-L pez, 481 U.S. at 832 (affirming circuit court
 

opinion that found due process required a "pretrial review" of

the underlying deportation). Although the Ninth Circuit has held

that the Mendoza-L pez issue must go to the jury if the issue has
 

not previously been addressed before trial, United States v.
 

 -10-

Ibarra, 3 F.3d 1333, 1334 (9th Cir. 1993) -- a ruling about which
 

we express no opinion at this point -- even that opinion

foreclosed a relitigation of the issue if already decided by the
 

court on a pretrial motion. Id. In this case, the district
 

court granted a preliminary hearing on the Mendoza-L pez issue at
 

which Smith had the opportunity to fully and fairly litigate the

issue before the court. If Smith failed to request an

evidentiary hearing or otherwise failed to take full advantage of

the opportunity afforded to him by the district court, such

failure was of his own doing and does not, by itself, warrant a

second bite at the apple. Under such circumstances, Smith cannot

assert a right to relitigate the Mendoza-L pez issue at trial.
 

Therefore, the court's dismissal of Smith's motion, and its

subsequent exclusion of evidence pertaining to Smith's

deportation proceedings are affirmed.

B. Attack on Aggravated Felony Portion of the Indictment
 

 In his motion to dismiss, Smith also argued that proof

of a prior aggravated felony conviction is an element of an

offense under 8 U.S.C. 1326(b)(2).2 Because Smith's only

 

2 8 U.S.C. 1326 provides in relevant part:

 (a) Subject to subsection (b) of this
 section, any alien who --

 (1) has been arrested and deported or
 excluded and deported, and thereafter
 (2) enters, attempts to enter, or is at
 any time found in, the United States . .
 .

 shall be fined under Title 18, or
 imprisoned not more than 2 years, or

 -11-

aggravated felony conviction had been vacated by the state court,

Smith argued in the motion that the district court should dismiss

that part of the indictment which referenced the aggravated

felony provision, 1326(b)(2). The district court rejected this

argument when it denied the motion.

 Subsequent to the proceedings in the district court, we

decided United States v. Forbes, 16 F.3d 1294, 1297-1300 (1st
 

Cir. 1994), in which we held that 1326(b) does not establish a

separate offense, but rather simply provides a sentence

enhancement for those convicted under 1326(a) (the offense for

reentry into the United States after being deported), who had

been convicted of an aggravated felony before their deportation.

That case controls the present issue. Section 1326(b)(2) is not

a separate element of an offense and therefore, the vacation of

Smith's underlying felony conviction cannot provide grounds for

dismissal of the indictment. The district court's ruling must

therefore be upheld.

 Smith urges us to reconsider our holding in Forbes. We
 

decline to upset that decision and, in any event, are not free to

do so as a newly constituted panel. Broderick v. Roache, 996
 

 

 both.

 (b) Notwithstanding subsection (a) of
 this section, in the case of any alien
 described in such subsection --

 (2) whose deportation was subsequent to a
 conviction for commission of an
 aggravated felony, such alien shall be
 fined under such Title, imprisoned not
 more than 15 years, or both.

 -12-

F.2d 1294, 1298 (1st Cir. 1993). Furthermore, we note that the

district court prudently sentenced Smith as if his aggravated

felony did not exist, by implementing a downward departure that,

according to the court, "in effect strips out the conviction that

has been vacated." Thus, even if the district court had erred in

refusing to dismiss the aggravated felony portion of the

indictment, which it did not, that error would have been harmless

because Smith was never sentenced on the allegedly erroneous

count. United States v. Long, 894 F.2d 101, 108 (5th Cir. 1990).
 

 Affirmed.
 

 -13-